IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

JEFFERSON RAY,

      Plaintiff,                                 Case No. 1:20-cv-00127-JMC-GJF

v.

NEW MEXICO STATE POLICE, and
OFFICER DANIEL CAPEHART, Individually,
      Defendants.

**MEMORANDUM OPINION AND ORDER
GRANTING DANIEL CAPEHART'S MOTION FOR SUMMARY JUDGMENT AND
QUALIFIED IMMUNITY ON PLAINTIFF'S § 1983 CLAIMS;  GRANTING NEW
MEXICO STATE POLICE'S MOTION FOR JUDGMENT ON THE PLEADINGS
DISMISSING PLAINTIFF'S § 1983 CLAIMS; GRANTING DANIEL CAPEHART'S
CORRECTED MOTION FOR JUDGMENT ON THE PLEADINGS DISMISSING
PLAINTIFF'S STATE LAW CLAIMS; AND GRANTING NEW MEXICO STATE
POLICE'S MOTION FOR SUMMARY JUDGMENT ON
<u>PLAINTIFF'S STATE LAW CLAIMS.</u>**

Plaintiff Jefferson Ray failed to use his turn signal prompting then-New Mexico State

Police Officer Defendant Daniel Capehart to initiate a traffic stop in Farmington, New Mexico.

While standing next to Plaintiff's vehicle, Capehart smelled the odor of an alcoholic beverage

coming from within the vehicle.  Capehart asked Plaintiff if he had been drinking.  Despite

Plaintiff's denial, Capehart asked him to exit his vehicle.  Capehart conducted field sobriety tests,

which Plaintiff failed.  Capehart arrested Plaintiff for driving under the influence of alcohol or

drugs.  Plaintiff brings claims under 42 U.S.C. § 1983 and New Mexico state law against Capehart

and derivative claims against the New Mexico State Police Department ("NMSP").  Now before

the Court are Defendants' motions for summary judgment and judgment on the pleadings.  For the

reasons stated below, the Court grants Defendants' motions.

## I.     Procedural History

Plaintiff filed his original complaint in state district court.  Defendants removed the case to this Court on February 12, 2020, based on federal question jurisdiction over the § 1983 claims and supplemental jurisdiction over the state law claims.  The Court has subject matter jurisdiction over all claims.  Plaintiff timely filed an Amended Complaint, alleging five counts against Defendants: (1) false imprisonment and false arrest—enumerated torts under NMSA § 41-4-12; (2) intentional infliction of emotional distress; (3) negligence and negligence per se; (4) negligent hiring, training, retention, and supervision (against NMSP only); and (5) violations of due process and equal protection clauses of the Fourteenth Amendment under 42 U.S.C. § 1983.

Capehart moved for judgment on the pleadings as to Counts I through III for failure to state a claim upon which relief may be granted.  He additionally sought summary judgment on Count V asserting qualified immunity.[1]  NMSP moved for summary judgment on Counts I through IV and for judgment on the pleadings on Count V, based on governmental immunity and failure to state a claim upon which relief may be granted.  The parties have fully briefed the motions, which are now ripe for disposition.

## II.     Factual Background

On the evening of January 31, 2018, Capehart pulled-over a vehicle operated by Plaintiff in San Juan County, New Mexico.  Capehart activated his dashcam video when he began the traffic stop.  *See generally* Doc. 31, Ex. D.  Capehart told Plaintiff that he observed him fail to use his turn signal.  *See* Doc. 31, Ex. D at 1:40-1:47.  Plaintiff responded saying, "Oh, I'm sorry." *See id.* Capehart asked Plaintiff what he was doing and to identify his passenger.  Plaintiff responded in a

---

[1] Defendant Capehart also moved to stay the proceedings pending resolution of these motions on August 8, 2020.  The Court DENIES the motion as moot.

vague manner, saying he was just giving the passenger a ride.  *See* Doc. 31, Ex. A at Interrog. No. 3, Ex. D at 3:40 to 4:30, and Ex. C.  Capehart said he could smell a strong odor of alcoholic beverage coming from the vehicle.

Capehart asked Plaintiff if he had consumed alcoholic beverages that evening.  Plaintiff responded "no."  *See* Doc. 31, Ex. D at 4:31–4:38.  Capehart then asked Plaintiff to exit the vehicle. *See id.*  Capehart conducted standard field sobriety tests.  *See id.* at 4:41–13:50. Although he denied drinking himself, Plaintiff told Capehart that his passenger had been drinking.  *See id.* at 4:30– 4:40.  Capehart saw many indicators on the standardized field sobriety tests that led him to believe Plaintiff was unsafe to drive and therefore arrested him for driving under the influence of intoxicating liquor or drugs.[2]  *See id.* at 13:51–14:30.  Capehart then transported Plaintiff to the New Mexico State Police Office and asked him to submit to a breathalyzer test.  Plaintiff participated in two breath tests, both of which resulted in levels of 0.00g/210L.  *See* Doc. 36, Ex. 2.  Despite the negative results, Capehart took Plaintiff to San Juan Regional Medical Center for a blood draw.  While awaiting the results from the blood draw, Capehart transported Plaintiff to the San Juan County Detention Center and booked him for driving under the influence of alcohol or drugs in violation of NMSA 1978, § 66-8-102(b).[3]  The San Juan Valley Detention Center released Plaintiff from custody a few days later.  *See* Doc. 36, Ex. 4.

---

[2] The dashcam video recording shows Plaintiff's inability to maintain his balance during the "walk and turn" test and "one-legged stand" test.  *See* Ex. D at 7:38 to 11:06.

[3] Plaintiff alleges in his Amended Complaint that the blood draw also returned negative results.  Although true, Defendant Capehart did not have immediate access to these results.

### III.    Applicable Law

#### A.  Rule 12(c) Judgment on the Pleadings

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c).  Rule 12(c) provides a means of disposing of cases when parties do not dispute material facts.  *Pena v. Greffet*, 110 F. Supp. 3d 1103, 1112 (D.N.M. 2015) (citing *Kruzits v. Okuma Mach. Tool, Inc.*, 40 F.3d 52, 54 (3d. Cir. 1994)).  Rule 12(c) motions are generally treated like motions to dismiss under Rule 12(b)(6), except that a court dismisses claims under Rule 12(c) with prejudice.  *Id.* (citations omitted).  Under 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  "The nature of a Rule 12(b)(6) motion tests the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true."  *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994).  If taken as true, those allegations must "state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v Twombly*, 550 U.S. 544, 570 (2007).  "[M]ere 'labels and conclusions,' and 'a formulaic recitation of the elements of a cause of action' will not suffice; a plaintiff must offer specific factual allegations to support each claim."  *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011) (quoting *Twombly*, 550 U.S. at 555).  The Court, in ruling on a motion to dismiss, "should disregard all conclusory statements of law and consider whether the remaining specific factual allegations, if assumed to be true, plausibly suggest the defendant is liable."  *Id.*

For 12(c) motions, the Court accepts "all facts pleaded by the non-moving party as true and grant[s] all reasonable inferences from the pleadings in that party's favor."  *Sanders v. Mountain Am. Fed. Credit Union*, 689 F.3d 1138, 1141 (10th Cir. 2012) (citation and internal quotation marks omitted).  But "[w]hen a party presents matters outside of the pleadings for

consideration, as a general rule the court must either exclude the material or treat the motion as one for summary judgment." *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 861 F.3d 1081, 1103 (10th Cir. 2017) (citation and internal quotation marks omitted);  Fed. R. Civ. P. 12(d).

"Once the motion has been converted, statements in the pleadings cannot create a factual dispute when the movant has produced [evidence] which contain[s] factual allegations contrary to the pleadings and which establish[es] its entitlement to judgment as a matter of law." *Nichols v. United States*, 796 F.2d 361, 364–65 (10th Cir. 1986) (citation omitted).  "However, if the movant fails to carry its burden under Rule 56 and its [evidence] do[es] not establish the absence of a genuine issue of fact, summary judgment must be denied, even if no opposing evidentiary matter is presented." *Id.*  (citation omitted).

## B. <u>Summary Judgment</u>

Summary judgment is appropriate when "there is no genuine dispute over a material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The party seeking summary judgment bears the initial burden of showing the absence of any genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).   The Court views "the record in the light most favorable to the nonmoving party." *Russillo v. Scarborough*, 935 F.2d 1167, 1170 (10th Cir. 1991).  A genuine dispute exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and a fact is material when it "might affect the outcome of the suit under the governing [substantive] law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  "If the movant meets this initial burden, the burden then shifts to the nonmovant to set forth specific facts from which a rational trier of fact could find for the nonmovant." *Libertarian Party of N.M. v. Herrera*, 506 F.3d 1303, 1309 (10th Cir. 2007) (citation and internal quotation marks omitted).  "[A] party opposing a properly supported motion for

5

summary judgment may not rest upon mere allegations or denials of his pleading, but must set

forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256.  The

Court does not "weigh the evidence and determine the truth of the matter" but determines whether

a genuine issue remains for trial.  *Id.* at 249.  The Court believes evidence of the nonmovant and

draws all justifiable inferences in his favor.  *Id.* at 255 (citation omitted).

### C.  Qualified Immunity

"Title '42 U.S.C. § 1983 allows an injured person to seek damages against an individual

who has violated his or her federal rights while acting under color of state law.'"  *Est. of Booker*

*v. Gomez*, 745 F.3d 405, 411 (10th Cir. 2014) (quoting *Cillo v. City of Greenwood Village*, 739

F.3d 451, 459 (10th Cir. 2013)).  An individual defendant named in a § 1983 action may raise a

defense of qualified immunity, which "shields public officials . . . from damages actions unless

their conduct was unreasonable in light of clearly established law."  *Id.*  (citations omitted).  Once

a defendant asserts qualified immunity, the plaintiff bears the burden to show that (1) the defendant

violated a federal constitutional or statutory right, and (2) the right was clearly established at the

time of the defendant's unlawful conduct.  *Id.* (citation omitted)  The Court may decide these

prongs in either order.  *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

### IV.     Analysis

### A.  Section 1983 Claims

Plaintiff's claims ultimately flow from the Fourth Amendment.[4]  So key to resolving the

various motions before the Court is whether probable cause existed at the time of Plaintiff's stop

---

[4] As discussed elsewhere in this Order, Plaintiff's Amended Complaint incorrectly
identifies his claims as flowing from the Fourteenth Amendment of the Constitution.  His
briefing appears to abandon this position.  To the extent Plaintiff continues to rely on the
Fourteenth Amendment as the basis of his § 1983 claim, the Court rejects his claim as explained
herein.

and arrest to support a charge under NMSA 1978, § 66-8-102(B)—driving under the influence of drugs or alcohol.  For the reasons discussed below, the Court concludes probable cause existed under federal law to support Plaintiff's charge.

### 1. **Capehart Lawfully Stopped Plaintiff.**

The Tenth Circuit views an ordinary traffic stop as analogous to an investigative detention. *See United States v. Botero-Ospina*, 71 F.3d 783, 786 (10th Cir. 1995) (citation omitted).  So the Court analyzes a traffic stop under the principles pertaining to investigative detentions set forth in *Terry v. Ohio*, 392 U.S. 1 (1986). *Id.* (citation omitted).  "To determine the reasonableness of an investigative detention, we make a dual inquiry, asking first 'whether the officer's action was justified at its inception,' and second 'whether it was reasonably related in scope to the circumstances which justified the interference in the first place.'" *Id.* (quoting *Terry*, 392 U.S. at 20).  So under the Fourth Amendment, a valid traffic stop occurs if the officer observes a traffic violation or the officer has a "reasonable articulable suspicion that a traffic or equipment violation has occurred or is occurring." *Id.* at 787.

New Mexico law requires a driver to engage the use of his turn signal when there is reasonable possibility that other traffic may be affected.  *State v. Hubble*, 206 P.3d 579, 583 (N.M. 2009) (citing N.M. Stat. Ann. § 66-7-325(A)).  In his Amended Complaint, Plaintiff alleges he used his turn signal appropriately and claims the dashcam video confirms he did. *See* Am. Compl. ¶ 13.  The dashcam video confirms Plaintiff lawfully signaled *as he stopped in response to Capehart's pursuit*.  Doc. 31, Ex. D at 1:00–1:06. *See Carabajal v. City of Cheyenne*, 847 F.3d 1203, 1207 (10th Cir. 2017) (a court "cannot ignore clear, contrary video evidence in the record depicting the events as they occurred") (citing *Scott v. Harris*, 550 U.S. 372, 380 (2007)).  But the

dashcam video does not account for the failure to signal *that prompted Capehart's pursuit.*[5] Capehart contends he activated his dashcam when he started pursuing Plaintiff for failure to signal. And Capehart's pursuit of Plaintiff started one minute before Plaintiff's lawful signal occurred— his turn signal as he pulled over for the stop. *See* Doc. 31, D at 1:00–1:06.

Once stopped, Capehart approached Plaintiff and told him that he observed Plaintiff fail to use his signal, which prompted the initial stop. Plaintiff did not contend at that moment, or in his pleadings that he did signal when Capehart said he did not. Nor does he provide evidence to the contrary. Rather Plaintiff responded to Capehart with, "Oh, I'm sorry." *See* Doc. 31, Ex. D at 1:40–1:47. Taking all the evidence and reasonable inferences in the light most favorable to Plaintiff, the Court concludes Capehart possessed reasonable suspicion to initiate the traffic stop.

### 2. Capehart had Reasonable Suspicion to Conduct Field Sobriety Tests.

"A field sobriety test is a minor intrusion on a driver only requiring a reasonable suspicion of intoxication and 'an easy opportunity to end a detention before it matures into an arrest.'" *Wilder v. Turner*, 490 F.3d 810, 815 (10th Cir. 2007) (quoting *Miller v. Harget*, 458 F.3d 1251, 1260 (11th Cir. 2006)). The Tenth Circuit has found the admission of a driver having one beer three hours prior to the stop sufficient to give rise to reasonable suspicion. *See Vondrak v. City of Las Cruces*, 535 F.3d 1198, 1206–07 (10th Cir. 2008). And New Mexico law finds driving while impaired to the slightest degree unlawful. *See* N.M. Stat. Ann. § 66-8-102(A); *State v. Gurule*, 252 P.3d 823, 826 (N.M. Ct. App. 2011).

---

[5] Neither Plaintiff nor Defendants seem to argue that additional dashcam video exists. To the extent Plaintiff suggests that the dashcam video in the  shows the failure to signal that actually resulted in the traffic stop, such an argument is clearly contrary to the video footage which shows only that Plaintiff signaled when the Capehart initiated the traffic stop.

Here, Capehart contends he smelled alcohol emanating from Plaintiff's vehicle.   But Plaintiff denied drinking alcohol and appeared to pin the odor on his passenger—who Plaintiff admitted had been drinking.   But even though Plaintiff denied any consumption, the records supports Capehart's argument that he objectively and particularly identified the odor and relied on it to further detain Plaintiff and conduct the field sobriety tests.   New Mexico law criminalizes impairment to the slightest degree and Capehart could smell alcohol coming from the vehicle. Accordingly, the Court finds Capehart had reasonable suspicion to extend the traffic stop to conduct the field sobriety tests.

**3.   Capehart's Reasonable Suspicion Transformed into Probable Cause Leading to Plaintiff's Arrest.**

"An arrest is 'characterized by highly intrusive or lengthy search or detention,' and must therefore be supported by probable cause." *United States v. Valenzuela*, 365 F.3d 892, 896 (10th Cir. 2004) (quoting *Oliver v. Woods*, 209 F.3d 1179, 1185 (10th Cir. 2000)).   "Probable cause to arrest exists only when the 'facts and circumstances within the officers' knowledge, and of which they have reasonably trustworthy information, are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed.'" *Id.*   (quoting *United States v. Edwards*, 242 F.3d 928, 934 (10th Cir. 2001)).   "Probable cause does not require facts sufficient for a finding of guilt; however, it does require more than mere suspicion." *United States v. Morris*, 247 F.3d 1080, 1088 (10th Cir. 2001) (citation and internal quotation marks omitted).   Using an objective standard, the court asks "whether a reasonable officer would have believed that probable cause existed to arrest the defendant based on the information possessed by the arresting officer." *Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1312 (10th Cir. 2002) (citation and internal quotation marks omitted) (alterations omitted).

New Mexico law requires a person to signal in the appropriate manner when turning a vehicle.  N.M. Stat. Ann. § 66-7-325.  No disputed issue of material fact exists contradicting Capehart's claim that Plaintiff did not properly use his signal prior to turning (as discussed above, the video footage in the record does not capture the failure to signal for which Capehart stopped Plaintiff).  Under established Tenth Circuit law, Plaintiff's failure to signal provided reasonable suspicion for Capehart to stop him.  *United States v. Botero-Ospina*, 71 F.3d 783, 787 (10th Cir. 1995) ("[A] traffic stop is valid under the Fourth Amendment if the stop is based on an observed traffic violation or if the police officer has reasonable articulable suspicion that a traffic or equipment violation has occurred or is occurring.").

Then, upon approaching Plaintiff's vehicle, Officer Capehart smelled the odor of alcohol coming from the vehicle.  This led to Capehart's request that Plaintiff perform various field sobriety tests.  Plaintiff's performance on the field sobriety tests indicated he was not safe to drive. The Tenth Circuit has held, in similar circumstances, that the smell of alcohol and the failure of field sobriety tests provided probable cause to arrest a driver suspected of being under the influence of drugs and alcohol.  *See Titus v. Ahlm*, 297 F. App'x 796, 798, 800 (10th Cir. 2008) (unpublished) (where the Court confirmed probable cause existed based on alcohol odor and the driver's poor performance during field sobriety tests); *cf. Carlsen v. Duron*, No. 99-4065, 2000 WL 1205822, at *4 (10th Cir. Aug. 24, 2000) (unpublished) (citing *United States v. Barry*, 98 F.3d 373, 377 (8th Cir. 1996)).  As the foregoing demonstrates, probable cause existed for Plaintiff's stop and subsequent arrest.  Accordingly, the Court concludes probable cause existed and grants Capehart's Motion for Summary Judgment as to Plaintiff's § 1983 Claim.

4. **The Court Grants Capehart's Motion for Summary Judgment Because He is Entitled to Qualified Immunity.**

Plaintiff's § 1983 Claim also fails because Capehart is entitled to qualified immunity. Plaintiff's Amended Complaint alleges Capehart's conduct violated clearly established constitutional law under the Fourteenth Amendment.  Plaintiff also alleges this conduct violated the protection of his well-being and health, and "ultimately the equal protection of Plaintiff, directly violating his rights under the due process and equal protection clauses of the 14th Amendment." Am. Compl. ¶ 39.  Yet Plaintiff's response to Capehart's Motion for Summary Judgment is based, not upon the Fourteenth Amendment, but instead on the Fourth Amendment. Because Plaintiff has not sought to amend his Amended Complaint and has advanced only Fourth Amendment claims, his Fourteenth Amendment is waived.  But in this instance it does not matter whether Plaintiff's Fourteenth Amendment argument is properly before the Court because Plaintiff does not meet his burden of overcoming Capehart's qualified immunity defense and, therefore, loses under either Amendment.

a. **The Summary Judgment Record Demonstrates that Officer Capehart did not Violate Plaintiff's Fourth or Fourteenth Amendment Rights.**

As explained in this subsection, Plaintiff cannot maintain his false arrest/wrongful detention claims under the Fourteenth Amendment as pleaded in the Amended Complaint.[6] "Because the Fourth Amendment provides an explicit textual source of constitutional protection against . . . physically intrusive governmental conduct, that Amendment, not the more generalized

---

[6] Plaintiff alleges Capehart violated his rights under the Fourteenth Amendment along with the false arrest and wrongful detention claims.  Plaintiff fails to identify the appropriate constitutional peg onto which to hang his constitutional claim.  Consequently, the Court will analyze his claim under the Fourth Amendment even though the first step in a § 1983 suit requires Plaintiff "identify the specific constitutional right at issue," *Albright v. Oliver*, 510 U.S. 266, 271 (1994), and the "[p]laintiff is the master of his complaint," *Doe v. Univ. of Denver*, 952 F.3d 1182, 1187 (10th Cir. 2020).

notion of 'substantive due process,' must be the guide for analyzing these claims." *Graham v. Connor*, 490 U.S. 386, 395 (1989).  And "[t]he more general due process considerations of the Fourteenth Amendment are not a fallback to protect interests more specifically addressed by the Fourth Amendment." *Becker v. Kroll*, 494 F.3d 904, 919 (10th Cir. 2007) (citing *Albright v. Oliver*, 510 U.S. 266, 273 (1994)).  So the Fourth Amendment governs Plaintiff's claim because as an arrestee on January 31, 2018, he alleges false arrest and false imprisonment—pretrial liberty deprivations claims.  *See Albright*, 510 U.S. at 273–74; *Taylor v. Meacham*, 82 F.3d 1556, 1560 (10th Cir. 1996).  And *Graham* instructs that "[t]he validity of the claim must then be judged by reference to the specific constitutional standard which governs that right, rather than to some generalized [ ] standard." *Graham*, 490 U.S. at 394.  It follows, then, that a substantive due process claim cannot turn on an alleged wrongful arrest.[7]  *See Albright*, 510 U.S. at 273–74.  For these reasons, the Fourteenth Amendment does not govern Plaintiff's claim and, therefore, the Court analyzes Plaintiff's claim under the Fourth Amendment which turns on whether Capehart had probable cause for the arrest and detention.

Under New Mexico law, intoxication exists when the driver (1) is "less able to the slightest degree, either mentally or physically, or both, to exercise the clear judgment and steady hand necessary to handle a vehicle with safety to the driver and the public as a result of drinking the liquor," *State v. Gurule*, 252 P.3d 823, 826 (N.M. Ct. App. 2011) (citation and internal quotation marks omitted), or (2) is "under the influence of any drug to a degree that renders the person incapable of safely driving a vehicle," N.M. Stat. Ann. § 66-8-102(B).

---

[7] Plaintiff's § 1983 claim also fails to the extent that he cites the Fourteenth Amendment in his Amended Complaint for Defendant's "unlawful arrest" due to lack of probable cause.

Plaintiff alleges that Capehart violated his constitutional rights when he took no action to release Plaintiff after Plaintiff blew a 0.00.  Plaintiff contends that, after the test, Capehart lacked probable cause for Plaintiff's arrest.  Although Plaintiff did blow a 0.00, Doc. 37, Ex. 2, Plaintiff previously failed the field sobriety tests that Capehart administered, *see* Doc. 31, Ex. D.  And Capehart smelled alcoholic beverages coming out of the vehicle.  So despite the negative breathalyzer tests, Capehart still had probable cause to arrest Plaintiff pending the outcome of the blood tests.  *See Carlsen*, 2000 WL 1205822, at *4; *State v. Granillo-Macias*, 176 P.3d 1187, 1190 (N.M. Ct. App. 2007) (where the court found the smell of alcohol and defendant's performance of the field sobriety tests constituted sufficient circumstances to provide probable cause).

Plaintiff further alleges that after he passed the breathalyzer tests, he was taken for a blood test—which also demonstrated that he did not have alcohol in his system.  Plaintiff contends that Capehart violated his constitutional rights by detaining him after the blood test results were available.  While Plaintiff may be correct that authorities should have released him upon receiving these results, he has no claim against Capehart based upon this record.  Assuming, as we must for purposes of this case, that the toxicology report ultimately revealed Plaintiff had no substances in his system at the time of the arrest, Capehart could not have learned the report's contents until April 11, 2018—well after Plaintiff was released from custody.[8]  *See* Ex. 3.

As more thoroughly discussed above, the summary judgment record includes the magistrate judge's finding that probable cause existed at the time of the arrest, *see* Doc. 31, Exs. B and G, and dashcam video showing Plaintiff's inability to complete the field sobriety tests, *see* Doc. 31, Ex. D.  The facts available to Capehart shown by the summary judgment record—

---

[8] Plaintiff presents no evidence or cites no facts showing that Capehart caused him to be locked-up after Capehart learned of the blood-test results.

including the odor of alcohol and Plaintiff's inability to perform the sobriety tests—furnished evidence providing probable cause that Plaintiff was intoxicated as that term is defined under New Mexico law.  *See Carlsen*, 2000 WL 1205822, at *4; *United States v. Turner*, 553 F.3d 1337, 1345 (10th Cir. 2009).   Viewing all the evidence in a light most favorable to Plaintiff, Capehart's dashcam video and his other summary judgment evidence support probable cause existed.   Thus, Plaintiff cannot maintain a false or wrongful arrest claim under the Fourth Amendment.   Capehart is, therefore, entitled to qualified immunity because he did not violate Plaintiff's Fourth Amendment rights.  *See Puller v. Baca*, 781 F.3d 1190, 1200 (10th Cir. 2015).

> **b.   Any Alleged Violation is Not Clearly Established.**

Even if Defendant had violated Plaintiff's constitutional rights, Plaintiff cites no case law to show his rights were clearly established.   To determine whether Plaintiff's rights were clearly established the Tenth Circuit asks "whether officers *arguably* had probable cause" to make the arrest.  *Kaufman v. Higgs*, 697 F.3d 1297, 1300 (10th Cir. 2012).   And Tenth Circuit authority supports that when at least arguable probable cause exists, then a Defendant is entitled to qualified immunity.   *See id.*   Meaning "[w]hen a warrantless arrest is the subject of a § 1983 action, the defendant arresting officer is 'entitled to immunity if a reasonable officer could have believed that probable cause existed to arrest' the plaintiff."  *Romero v. Fay*, 45 F.3d 1472, 1476 (10th Cir. 1995) (quoting *Hunter v. Bryant*, 502 U.S. 224, 228 (1991)).    So even if Capehart mistakenly concluded probable cause existed, but that mistake is one any reasonable officer could make, he is entitled to qualified immunity.  *See Morris v. Noe*, 672 F.3d 1185, 1194 (10th Cir. 2012) (citing *Cortez v. McCauley*, 478 F.3d 1108, 1120 (10th Cir. 2007)).

Based on the evidence discussed above, Plaintiff has not met the heavy burden imposed on him to overcome qualified immunity.   His allegations and evidence do not show Capehart violated

a clearly established constitutional or statutory right. And Plaintiff presents no case that establishes with sufficient particularity that, to the extent Capehart violated his constitutional rights, such a right was clearly established. For these reasons, the Court grants summary judgment to Capehart on Count V.

5. **The Court Converts Defendant New Mexico State Police Department's Motion for Judgment on the Pleadings to a Motion for Summary Judgment and Grants that Motion as to Plaintiff's § 1983 Claim.**

Plaintiff also brings a § 1983 claim against Defendant NMSP. NMSP moved for judgment on the pleadings regarding this claim. Plaintiff submitted exhibits in response to the Motion. The Court exercises its discretion and converts Defendants' 12(c) motions to motions for summary judgment. *See* Fed. R. Civ. P. 12(d)*. Contra Armstrong v. N.M. Disability Determination Servs.*, 278 F. Supp. 3d 1193, 1218 (D.N.M. 2017). Accordingly, the Court considers all the evidence submitted by the parties and decides the motions disposed of in this section as motions for summary judgment.

Plaintiff fails to plead what NMSP specifically did to violate his constitutional rights in his § 1983 claim. At best, Plaintiff incorporates Count IV—negligent hiring, training, retention, and supervision—into this claim. Plaintiff fails, however, to specify how NMSP violated his constitutional rights and appears to rely on the doctrine of *respondeat superior* to allege NMSP's liability. Plaintiff contends that Capehart worked as an employee of NMSP, creating the requisite relationship between the two Defendants to hold NMSP accountable for Capehart's conduct.

Even forgiving Plaintiff's deficient pleading, his § 1983 claim against NMSP fails for two reasons. First, NMSP is a division of the New Mexico Department of Public Safety ("DPS"), an executive cabinet department of the State of New Mexico. N.M. Stat. Ann. § 9-19-4 (2015). DPS is a state agency, and "a [s]tate is not a person within the meaning of § 1983." *Will v. Mich. Dep't*

*of State Police*, 491 U.S. 58, 64 (1989) (holding that the petitioner could not maintain suit against the Michigan Department of Police).  And second, to the extent that Plaintiff's claim relies on *respondeat superior* liability, § 1983 will also not support such a claim.  *See Polk Cnty. v. Dodson*, 454 U.S. 312, 325 (1981) (citing *Monell v. N.Y. City Dept. of Social Servs.*, 436 U.S. 658, 694 (1978)) ("Section 1983 will not support a claim based on a *respondeat superior* theory of liability.").  Even if Plaintiff could rely on *respondeat superior*, this Court concluded Capehart is entitled to qualified immunity on Count V earlier in this opinion, thus defeating any potential vicarious liability.

Plaintiff also asks the Court to deny NMSP's motion and to allow him to conduct more discovery.  Even if the Court views all the evidence in a light most favorable to Plaintiff, and even if it allows further discovery, Plaintiff's claim would still fail.  As discussed, Plaintiff cannot rely on *respondeat superior* and NMSP is not a person within the meaning of § 1983.  Additional discovery would therefore serve no legitimate purpose.  So the Court rejects Plaintiff's request for additional discovery and grants summary judgment for NMSP on Plaintiff's § 1983 claim.

### B.  Plaintiff's State Law Claims Under the New Mexico Tort Claims Act

Plaintiff also brings four state law tort claims—false imprisonment and false arrest, intentional infliction of emotional distress, negligence and negligence per se, and negligent hiring and supervision—against Defendants.[9]  Defendants filed dispositive motions as to each of these tort claims.  Exercising supplemental jurisdiction, the Court converts Capehart's Motion for

---

[9] Plaintiff's claim for negligent hiring and supervision is alleged against Defendant NMSP only.

Judgment on the Pleadings to a motion for summary judgment and grants it as to Counts I through III and grants NMSP's motion for summary judgment as to Counts I through IV.[10]

1.  **The Court Converts Capehart's Rule 12(c) Corrected Judgment on the Pleadings to a Motion for Summary Judgment and Grants that Motion for Counts I to III.**

Plaintiff alleges Capehart committed various torts by arresting and detaining him.  To prevail on his state-law tort claims, Plaintiff must show his claims are not prohibited by the New Mexico Tort Claims Act ("Tort Claims Act"), which provides governmental immunity from liability for any tort absent a specific statutory waiver.  N.M. Stat. Ann. § 41-4-12.   Of the torts Plaintiff alleges, the Tort Claims Act waives immunity only for false imprisonment and false arrest.  *See id.* Accordingly, as to the claims for which there is no waiver of immunity, the Court grants summary judgment in favor of Defendants.  With respect to the claims for which the Tort Claims Act does waive sovereign immunity, the Court grants summary judgment in favor of Defendants as well because, viewing the evidence in a light most favorable to Plaintiff and granting all reasonable inferences to him, the claims he presents in Counts I, II and III fail as a matter of law.[11]

a.  **Count I**

Plaintiff alleges Capehart committed the tort of wrongful arrest and wrongful detention as a result of the January 31, 2018 traffic stop.  New Mexico has analyzed wrongful arrest and wrongful detention claims as claims for false arrest and false imprisonment.  *See Benavidez v.*

---

[10]  Plaintiff also submitted exhibits in response to Capehart's Corrected Motion for Judgment on the Pleadings (Doc. 35) and the court exercises its discretion and converts the motion to a motion for summary judgment.  *See* Fed. R. Civ. P. 12(d).

[11]  The Court DENIES Capehart's initial Motion for Judgment on the Pleadings (Doc. 30) as MOOT.

*Shutiva*, 350 P.3d 1234, 1240–43 (N.M. Ct. App. 2015).  And under New Mexico law, to succeed on his false arrest and false imprisonment claims, Plaintiff must show Capehart arrested and confined him without probable cause.  *Id.* at 1241.

Like the Tenth Circuit, New Mexico finds "[p]robable cause exists when the facts and circumstances within the knowledge of the officers, based on reasonably trustworthy information, are sufficient to warrant a person of reasonable caution to believe that an offense has been or is being committed." *Benavidez*, 350 P.3d 1234, 1241 (N.M. Ct. App. 2015) (quoting *State v. Cohen*, 711 P.2d 3 (N.M. 1985))*.  See also Valenzuela*, 365 F.3d at 896 ("Probable cause to arrest exists only when the facts and circumstances within the officers' knowledge, and of which they have reasonably trustworthy information, are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed." (citation and internal quotation marks omitted)).  In section IV(A)(3) above, the Court concluded Capehart had probable cause to stop and subsequently to arrest Plaintiff under federal law.[12]  And, as discussed above, the standard for finding probable cause is materially similar under both applicable New Mexico state law and federal law. Reviewing the facts in a light most favorable to Plaintiff, the Court

_____

[12] The Court also concludes Capehart had reasonable suspicion to stop Plaintiff to begin with.  In New Mexico, "to validly stop an automobile, police officers must possess, at a minimum, reasonable suspicion that a law has been violated." *State v. Candelaria*, 245 P.3d 69, 72–73 (N.M. Ct. App. 2010).  "Such suspicion arises only when officers can detect 'specific articulable facts . . . that, when judged objectively, would lead a reasonable person to believe criminal activity occurred or was occurring.'"  *Id.* (quoting *State v. Vandenberg*, 81 P.3d 19, 25 (N.M. 2003)). Failure to comply with NMSA 1978, § 66-7-325(A) can give rise to reasonable suspicion. *Hubble*, 206 P.3d 579, 587–88 (N.M. 2009).  The court should look at the "totality of the circumstances" through an objective lens to determine if the specific articulable facts that the officer observed "would lead a reasonable officer to believe a plaintiff violated the turn signal statute." *Id.  See also State v. Robbs*, 136 P.3d 570, 574 (N.M. Ct. App. 2006) ("Questions of reasonable suspicion are reviewed de novo by looking at the totality of the circumstances to determine whether the detention was justified.").

concludes Capehart had probable cause under New Mexico state law in addition to federal law. As a result, Plaintiff cannot maintain a state law claim for false arrest or false imprisonment.

Plaintiff additionally seems to raise in Count I an additional "claim" for an amorphous violation of his rights under state and federal law. To the extent his additional Count I claim is based upon federal civil rights law, the Court rejects the claim for the reasons set forth in section IV(A)(4)(a) above. To be sure, despite his vague reference to federal law, Plaintiff does not cite federal law in Count I.

Plaintiff's vague reference to "rights under state law" seems to suggest that the Tort Claims Act confers certain "rights" upon him. But the Tort Claims Act does not create a cause of action under which Plaintiff can bring his claim, rather, it removes immunity granted to the state for specific torts or violations when committed by law enforcement officers. *See* N.M. Stat. Ann. § 41-4-12. "In the absence of affirmative legislation, the courts of this state have consistently declined to permit individuals to bring private lawsuits to enforce rights guaranteed by the New Mexico Constitution, based on the absence of an express waiver of immunity under the Tort Claims Act." *Barreras v. State of N.M. Corr. Dep't*, 62 P.3d 770, 776 (N.M. Ct. App. 2003) (citation omitted). Nor has New Mexico passed a state analogue to the federal cause of action—42 U.S.C. § 1983—governing claims that violate a plaintiff's state constitutional or statutory rights. *Carter v. City of Las Cruces*, 915 P.2d 336, 340 (N.M. Ct. App. 1996). And no waiver of immunity for New Mexico constitutional claims exists. *See* N.M. Stat. Ann. § 41-4-12.

Accordingly, viewing the evidence in a light most favorable to Plaintiff, and granting all reasonable inferences therein, Plaintiff's additional Count I claims fail as a matter of law.

    b.  <u>**Count II**</u>

Plaintiff also alleges he suffered from intentional infliction of emotional distress because of Capehart's behavior during the stop.  As previously stated, the Tort Claims Act waives immunity only for specified torts.  *See* N.M. Stat. Ann. § 41-4-12.  Plaintiff does not identify a specific waiver of immunity for intentional infliction of emotional distress claims and, indeed, New Mexico has not recognized such a waiver.  *See, e.g., Garcia Montoya v. State Treasurer's Off.*, 16 P.3d 1084, 1102 (N.M. 2001) (upholding a dismissal of intentional infliction of emotional distress claim, because the Tort Claims Act does not waive immunity).  Accordingly, the Court grants summary judgment in favor of Capehart as to Count II.

    c.  <u>**Count III**</u>

Finally, Count III of Plaintiff's Amended Complaint alleges negligence and negligence per se.  The government has not waived immunity for negligence standing alone in New Mexico. *Lessen v. City of Albuquerque*, 187 P.3d 179, 186 (N.M. Ct. App. 2008) *cert denied*, 144 N.M. 331 (2008).  To have a valid claim under Section 41-4-12, a plaintiff must allege the negligence resulted from a tort enumerated in the statute for which the legislature has waived immunity.  *Id.* At best, Plaintiff alleged false arrest and false imprisonment.  But this Court concluded that Capehart had probable cause to arrest him under state law, so negligence under that claim fails. Similarly, New Mexico has not waived immunity for negligence per se claims.  *See* N.M. Stat. Ann. § 41-4-12.  So Plaintiff's negligence and negligence per se claims cannot survive, and the Court grants summary judgment to Capehart on Count III.

   **2.**  <u>**The Court Grants New Mexico State Police Department's Motion for Summary Judgment on Counts I to IV.**</u>

As discussed above, the New Mexico Tort Claims Act specifically enumerates the torts for which the Tort Claims Act waives immunity.  The Tort Claims Act does not waive immunity for

the torts alleged in Counts II and III of Plaintiff's Amended Complaint so those claims cannot succeed against NMSP. *See id.* And this Court concluded Capehart had probable cause to arrest and confine Plaintiff defeating Plaintiff's wrongful arrest and detention claim against NMSP under Count I. So Count IV of the Amended Complaint remains and pertains only to NMSP.

Count IV of Plaintiff's Amended Complaint alleges NMSP "was negligent in hiring, training, retention, and supervision of Capehart." Am. Compl. ¶ 32. New Mexico law only waives immunity for negligent hiring, training, retention, and supervision when the negligent training and supervision by a law enforcement officer causes a subordinate officer to commit an enumerated tort. *McDermitt v. Corr. Corp. of America*, 814 P.2d 115, 117 (N.M. Ct. App. 1991). Here, Plaintiff failed to establish that Capehart committed the enumerated tort of false arrest or false imprisonment. Accordingly, summary judgment is proper as to Count IV because Capehart did not commit an enumerated tort under the Tort Claims Act.

And to the extent that Plaintiff pleads that the doctrine of *respondeat superior* applies to Count I, again, NMSP cannot be liable because Capehart is not liable. *See Gallegos v. State*, 758 P.2d 299, 301 (N.M. Ct. App. 1987) (concluding that although the Tort Claims Act allows the application of *respondeat superior*, the Act still requires the negligent employee's conduct meets one of its waiver exceptions). Viewing the evidence in a light most favorable to Plaintiff, no genuine issue of material fact exists for Plaintiff's claims to survive, so the Court grants summary judgment for NMSP as to Counts I, II, III, and IV.

## V.      Conclusion

For the reasons set forth above, the Court GRANTS Capehart's Motion for Summary Judgment on Plaintiff's § 1983 claim (Doc. 31); GRANTS Defendant New Mexico State Police Department's Motion for Judgment on the Pleadings on Plaintiff's § 1983 claim (Doc. 53);

GRANTS Capehart's Corrected Motion for Judgment on the Pleadings on Plaintiff's State Law claims (Doc. 35); GRANTS Defendant New Mexico State Police Department's Motion for Summary Judgment on Plaintiff's State Law and Derivative Claims (Doc. 52); DENIES as MOOT Plaintiff's Motion to Stay pending Defendant's Motion for Summary Judgment (Doc. 33); and DENIES as MOOT Capehart's Motion for Judgment on the Pleadings (Doc 30).

Accordingly, the Court DISMISSES WITH PREJUDICE all claims against all Defendants in this case.

IT IS SO ORDERED.

Entered for the Court
this the 26th day of March, 2021

/s/ Joel M. Carson III_____
Joel M. Carson III
United States Circuit Judge
Sitting by Designation

22